IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

JAMIE C. MICKALOWSKI and
JOHN MICKALOWSKI,

    Plaintiffs,

v.                                                         No. 2:10-cv-02926-STA-cgc

OFFICE DEPOT, INC., and
BLUE CHIP INVESTMENTS, a
Florida Partnership, formerly known
as BLUE CHIP INVESTMENTS
PARTNERSHIP, a Florida limited
partnership,

    Defendants.

## REPORT AND RECOMMENDATION OF DEFENDANT OFFICE DEPOT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant Office Depot's ("Office Depot") Motion for Summary Judgment. (Docket Entry "D.E." #40). The instant motion was referred to United States Magistrate Judge Charmiane G. Claxton for a Report and Recommendation. (D.E. # 51). For the reasons set forth herein, the Court RECOMMENDS that Office Depot's Motion for Summary Judgment be DENIED.

**I. Introduction**

On December 8, 2010, Plaintiffs Jamie C. Mickalowski and John Mickalowski filed a Complaint for Damages for Personal Injuries alleging negligence of Defendants Office Depot, Inc. and Blue Chip Investments in state court relating to slip-and-fall injuries that occurred following seasonal snow and ice accumulation on January 29-30, 2010. On December 22, 2010,

1

Defendants removed the case to this Court. The Complaint alleges that Defendants owed a duty to Plaintiffs to provide a safe place to walk at the entrance to the Office Depot, to maintain the premises in a manner that made it safe for customers to enter the building, and to provide warnings of any unsafe conditions on the premises. (Pl.s' Compl., ¶ 17). The Complaint further alleges that Defendants breached those duties by failing to post signs, to adequately shovel the accumulated ice and snow, to apply salt or other substances to the ice and snow in a manner that would have made the premises and its entrance safe, or to otherwise provide conditions that would warn or mitigate the danger to Jamie Mickalowski and others walking on the sidewalk and into the covered area at the entry to the store. (*Id.* at ¶¶ 17-18.) As a direct and proximate result of these violations, Plaintiffs assert that Jamie Mickalowski suffered serious and permanent injuries and that John Mickalowski suffered the loss of services and consortium of his wife as a result of her injuries. (*Id.* at ¶¶ 31-32.)

**II. Proposed Findings of Fact**

On January 29, 2010, the National Weather Service recorded 1.09 inches of precipitation, two inches of snow, and freezing rain and ice pellets in the Memphis/Germantown area. (Pl.s' and Def.s' Facts ¶2; Pl.s' and Def.s' Additional Facts ¶1).[1] On that day, the high temperature was thirty-two degrees and the low temperature was twenty-eight degrees. (Pl.s' and Def.s' Additional Facts ¶2). Due to the inclement weather conditions, Jamie Mickalowski closed her tile business in Memphis, Tennessee out of concerns that someone would fall on the premises. (Pl.s' and Def.s' Facts ¶¶3-4).

---

[1] Defendants filed its Statement of Undisputed Material Fact along with its Motion for Summary Judgment (D.E. #40-1), and Plaintiffs responded to Defendant's Statement of Undisputed Material Fact with corresponding paragraph numbering (D.E. #47). When the facts are not in dispute, the Court will refer to these as "Pl.s' and Def.s' Facts." Additionally, Plaintiffs presented Additional Material Facts (D.E. #47), and Defendants responded to Plaintiffs' Additional Material Facts with corresponding paragraph numbering (D.E. #49). When the facts are not in dispute, the Court will refer to these as "Pl.s' and Def.'s Additional Facts."

On January 30, 2010, the National Weather Service recorded three one-hundredths of an inch of precipitation and one-tenth of an inch of snowfall in the Memphis/Germantown area. (Pl.s' and Def.s' Additional Facts ¶4). The recorded high temperature that day was twenty-eight degrees and the low temperature was eighteen degrees. (Pl.s' and Def.s' Additional Facts ¶3). As the inclement weather continued, Jamie Mickalowski went to her business to check on the pipes. (Pl.s' and Def.s' Facts ¶5). She turned on her vehicle and used a wooden spoon to defrost her windows before driving. (Pl.s' and Def.s' Additional Facts ¶6). She also wore New Balance shoes with a "textured sole." (Pl.s' and Def.s' Additional Facts ¶5).

As she began venturing out into the inclement weather, she observed that some of the roads were still covered in ice and snow and was more cautious than usual as she drove. (Pl.s' and Def.s' Facts ¶7). Upon arriving at her business, she noticed that there was some "slush" in the parking lot and snow and ice in a grassy area. (Pl.s' and Def.s' Facts ¶8). She was careful walking on the steps from her vehicle to her business. (Pl.s' and Def.s' Facts ¶9). After leaving her business, she sought to purchase an ice scraper, and she went to a grocery store and gas station on Truse Parkway with no success. (Pl.s' and Def.s' Facts ¶¶ 10-13). She then proceeded to Germantown Road and to continue looking for an ice scraper. (Pl.s' and Def.s' Facts ¶14).

During the same morning, Kathy Crane ("Crane") was the store manager in charge of the Office Depot store on Germantown Road. (Pl.s' and Def.s' Additional Facts ¶8). Office Depot did not have a written policy for maintenance outside the store. (Pl.s' and Def.s' Additional Facts ¶13). However, during the morning, Office Depot employees put an "ice melt" substance on the "entire" sidewalk from the entrance of the store to the parking lot, including the portions of the sidewalk located under the overhang. (Pl.s' and Def.s' Facts ¶¶27-28; Pl.s' and Def.s'

Additional Facts ¶¶18, 22, 24-26). Plaintiff does not dispute that Office Depot put the ice-melt substance on the area where she would later fall. (Pl.s' and Def.s' Additional Facts ¶21). Office Depot employees also shoveled outside of the store, but it is disputed exactly where they did so. (Pl.s' and Def.s' Additional Facts ¶29). Office Depot contends that they shoveled the area outside the entrance of the store all the way to the parking lot. (Def.s' Facts ¶29). Plaintiffs argue that Office Depot employees shoveled only the area between the second and third columns at the front of the store. (Pl.s' Facts ¶29). Office Depot employees also used brooms to clear away snow and ice. (Pl.s' and Def.s' Facts ¶30). Office Depot did not use any barriers, safety tape, or saw horses. (Pl.s' and Def.s' Additional Facts ¶9).

Crane checked the sidewalks when she left the store between 3:30 p.m. and 4:00 p.m., at which time the temperature was still below freezing. (Pl.s' and Def.s' Additional Facts ¶10-11). Crane left Office Depot employee Myron Green ("Green") in charge of the store. (Pl.s' and Def.s' Additional Facts ¶12). Green did not have any training regarding outside maintenance, but he used a shovel to clear some of the area in front of the store. (Pl.s' and Def.s' Additional Facts ¶¶14-15). However, the parties dispute the extent of Green's attempts. Office Depot States that Green "shoveled from the door to the curb and in between the second and third columns." (Pl.s' and Def.s' Additional Facts ¶16). Plaintiffs assert he only shoveled between the second and third columns "to clear the area immediately in front of the door." (Pl.s' and Def.s' Additional Facts ¶15).

On the afternoon of January 30, 2010, Jamie Mickalowski went to the Walgreens store adjacent to Office Depot in an attempt to purchase an ice scraper. (Pl.s' and Def.s' Facts ¶14). She noticed "slush, ice, and melting snow" in the Walgreens parking lot. (Pl.s' and Def.s' Facts ¶15). When she was unable to purchase an ice scraper at Walgreens, Jamie Mickalowski decided

4

to walk to Office Depot to continue her search. (Pl.s' and Def.s' Facts ¶17). There is no sidewalk connecting Office Depot and Walgreens. (Pl.s' and Def.s' Facts ¶18). Rather than moving her car to the Office Depot parking lot, which is separate although the stores are adjacent, she walked through the parking lot and began walking on the sidewalk next to Office Depot towards its entrance. (Pl.s' and Def.s' Facts ¶18-20). She could see "ice and slush on the sidewalk at Office Depot as she approached it" but was able to walk from Walgreens to Office Depot's sidewalk without falling. (Pl.s' and Def.s' Facts ¶¶20-21).

As she approached Office Depot's entrance, she decided to walk between two of the columns near the entrance. (Pl.s' and Def.s' Facts ¶21). She walked beneath the overhang "because no precipitation had fallen there and she thought that would be safer than continuing to walk through slush." (Pl.s' and Def.s' Additional Facts ¶¶19-20). Office Depot contends that, to do so, she left the sidewalk even though there was "nothing on the sidewalk that she was trying to avoid." (Def.s' Facts ¶24). Plaintiffs argue that she never left the sidewalk but walked between the columns on the sidewalk, which is an area that Office Depot should expect customers to use to reach the front entrance of the store. (Pl.s' Facts ¶24). Jamie Mickalowski admits that she "knew the walkway could be slippery" and "understood that there could potentially be ice under the slush." (Pl.s' and Def.s' Facts ¶26). As she walked between the columns, she fell.[2] (Pl.s' and Def.s' Facts ¶23).

### III. Summary Judgment Standard

Summary Judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

---

[2] Plaintiff's Complaint states that, as a result of her fall, she "injured her left arm and hand," including "serious, painful and permanent injury to her left hand [and] shoulders." (Pl.s' Compl. ¶¶30-31). She also alleges that she suffered "injuries to her body as a whole," including "painful bruises and contusions over various parts of her body," "disturbance of her nervous system," "fright and serious shock," "great pain and mental suffering," and "inability to enjoy the normal pleasures of life." (Pl.s' Compl. ¶¶31).

5

to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Although hearsay evidence may not be considered on a motion for summary judgment, *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 927 (6th Cir. 1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Thaddeus-X v. Blatter*, 175 F.3d 378, 400 (6th Cir. 1999). The evidence and justifiable inferences based on facts must be viewed in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 474 U.S. 574, 587 (1986); *Wade v. Knoxville Utilities Bd.,* 259 F.3d 452, 460 (6th Cir. 2001).

Summary Judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. *Id.* at 325. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the nonmoving party's evidence to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright et al., *Federal Practice and Procedure* § 2727 (2d ed. 1998).

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue for trial exists if evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some

metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 474 U.S. 574, 586 (1986).

## IV. Proposed Conclusions of Law

The sole issue presented in the instant case is whether summary judgment is appropriate on Plaintiffs' claims of negligence. As jurisdiction is based upon diversity of citizenship, the Court must apply Tennessee law. *Erie R. Co. v. Thompkins*, 304 U.S. 64, 78 (1938). In Tennessee, a plaintiff must demonstrate (1) that the defendant owed a duty to the plaintiff, (2) that the defendant's conduct breached this duty, (3) that the defendant's conduct was a cause-in-fact of the plaintiff's injury or damage, and (4) that no existing rule of law relieves the defendant from common-law liability for its negligence. *Burton v. Warren Farmers Co-op*, 129 S.W.3d 513, 523 (Tenn. Ct. App. 2002) (citations omitted). Under Tennessee's system of modified comparative fault, liability may be allocated in proportion to degree of fault so long as the fault attributable to the plaintiff is less than that attributable to the defendant. *McIntyre v. Balentine,* 833 S.W.2d 52, 57 (Tenn. 1992).

The presence of comparative fault is a question of fact within the province of the jury, and it should not be lightly invaded by the trial court. *Elrod v. Continental Apartments*, No. M2007-01117-COA-R3-CV, 2008 WL 425947, at *2 (Tenn. Ct. App. 2008) (citing *LaRue v. 1817 Lake, Inc.*, 966 S.W.2d 423, 427 (Tenn. Ct. App. 1997). "Summary judgment is generally not an appropriate judicial mechanism by which to determine comparative fault." *Elrod*, 2008 WL 425947, at *2. However, if the court "determines that all reasonable jurors would find the plaintiff's fault was fifty percent or more, it must grant summary judgment." *Carr v. Ozburn-Hessey Storage Co.,* No. 01-A-01-9511-CV-00527, 1997 WL 383295, at *3 (Tenn. Ct. App. 1996). Otherwise stated, summary judgment is appropriate when "the evidence is evaluated in

the light most favorable to the plaintiff and reasonable minds could not differ that her fault was equal to or great[er] than that of the defendants." *Elrod*, 2008 WL 425947, at *2 (quoting *Staples v. CBL & Associates, Inc.,* 15 S.W.3d 83, 91-92 (Tenn. 2000)).

With respect to the respective duties in the instant case, business operators are "not insurers of the safety of the common elements under their control; however, they do have a duty to exercise ordinary care with regard to the condition of the common areas and common passageways under their control." Elrod, 2008 WL 425947, at *2 (citing *Tedder v. Raskin*, 728 S.W.2d 343, 348 (Tenn. Ct. App. 1987)). Conversely, an individual patronizing the establishment has "a duty to exercise reasonable care for her own safety." *Elrod*, 2008 WL 425947, at *2 (citing *McClung v. Delta Square Ltd.* Partnership, 937 S.W.2d 891, 904 (Tenn. 1996). While a business invitee must exercise reasonable care, knowledge of a dangerous condition, such as the presence of snow or ice, "does not necessarily bar recovery as a matter of law." *Mumford v. Thomas*, 603 S.W.2d 154 (Tenn. Ct. App. 1980). Additionally, a voluntary decision to confront icy conditions does not automatically render an individual careless. *Gibbs v. Robin Media Group, Inc.,* No. M1999-00820-COA-R3-CV, 2000 WL 1207201, at *4 (Tenn. Ct. App. 2000). "The question of whether the plaintiff undertook a greater risk than an ordinarily prudent person would take under the circumstances is usually for the jury." *Hellon v. Trotwood Apartments, Inc.,* 460 S.W.2d 372, 375 (Tenn. Ct. App. 1970).

In the instant case, viewing the facts in a light most favorable to the plaintiff, a reasonable jury could find that Jamie Mickalowski's fault is less than fifty percent if they determine that she proceeded with caution but that Office Depot did not exercise ordinary care with respect to the condition of the common areas and passageways under their control. Specifically, while the facts in this case are generally uncontroverted, there are genuine disputes of material fact as to

the reasonableness of Office Depot's precautions and Jamie Mickalowski's actions. This is a question of fact that should not be determined by the Court, and thus summary judgment is not appropriate on this issue.

Defendant Office Depot cites *Elrod* as an example of when reasonable minds cannot differ that a plaintiff was fifty percent or more at fault. In *Elrod*, the plaintiff's vehicle slid while pulling into the defendant's parking lot during inclement winter weather, she noticed snow and ice on the ground surrounding she proceeded "in a most cautious manner" to "tiptoe" to the defendant's deposit box "to prevent injury to herself," but, "for reasons that defy logic," she "abandoned caution" and the Tennessee Court of Appeals affirmed the lower court's granting of summary judgment in favor of the defendant, determining that reasonable minds could not differ in determining the plaintiff's fault at fifty percent or more decided to "trot" back to her vehicle when she fell. *Elrod*, 2008 WL 425947, at *3.

However, the *Elrod* case differs from the instant case because there is a genuine issue of material fact as to whether Jamie Mickalowski proceeded with sufficient caution. She asserts that she believed her approach to the store between the columns was the safest route due to the overhead protection from the elements. There is no evidence that she acted in a manner that would "defy logic," as did the trotting plaintiff in *Elrod*. Instead, Plaintiff in this case provides a plausible explanation for her route---namely, that it did not appear it had received precipitation---that the jury could accept as reasonable. There is also a genuine issue of material fact with respect to the precise conditions outside the Office Depot at the time of Plaintiff's fall, especially with respect to the extent of the shoveling and sweeping of snow to clear the path. These are all genuine disputes of material fact that are appropriate for a jury.

Defendant Office Depot further cites *Sanders* in support of its contention that Plaintiff's decision to confront the open and obvious dangers of the snow and ice on the ground bars her from recovery because of the presence of alternative options. In *Sanders*, the plaintiff chose to confront the obviously icy conditions on a slope in the defendant's parking lot instead of using the bank's available drive-through window. *Sanders v. CB Richard Ellis, Inc.*, No. W2007-02805-COA-R3-CV, 2008 WL 4366124, at *1 (Tenn. Ct. App. 2008). The court determined that a reasonable person would have avoided the plaintiff's actions, and summary judgment was therefore appropriate. *Id.* at 5. However, while it was not disputed in *Sanders* that the plaintiff elected a more dangerous course of action, it is disputed in the present case whether Plaintiff acted with sufficiently reasonable care.

Next, Office Depot alleges that Jamie Mickalowski could have made various decisions that would have prevented her injury. First, Office Depot claims that Jamie Mickalowski could have abandoned her pursuit to purchase an ice scraper, which would have eliminated her encounter of the icy conditions on the Office Depot property. Yet unlike the *Sanders* case, where the Court stated that the plaintiff elected the more dangerous course of action to achieve her purpose, *see* 2008 WL 4366124, at *5, Office Depot's proposed alternative does not involve a safer method of completing the same task; it involves the plaintiff completely abandoning her task. Whether Jamie Mickalowski's decision to go to Office Depot to look for an ice scraper was reasonable given the circumstances is a question for the jury.

Second, Office claims Jamie Mickalowski was unreasonable in deciding to leave the sidewalk to walk between the columns in front of Office Depot instead of continuing on the straight path of the sidewalk. Plaintiffs asserts that she believed that this route was the safest as it did not appear any precipitation had fallen in that spot. She also asserts that she never left the

sidewalk by walking between the columns, which she claims are an area that Office Depot should expect customers to use to reach the entrance of the store. Whether this route was sufficiently reasonable is another jury question.

Third, Office Depot claims that Jamie Mickalowski could have driven her car from Walgreen's to Office Depot, thereby eliminating her encounter with the icy conditions. However, Jamie Mickalowski was no longer in the parking lot when she fell. Instead, she had already begun walking on the sidewalk in front of Office Depot when she walked between the columns and slipped. There is no indication that had she driven to Office Depot she would have necessarily avoided the danger of the icy conditions in front of Office Depot.

In addition to the acts Office Depot alleges Plaintiff should not have taken, Office Depot alleges that it "took reasonable steps to provide a safe pathway into the store." (Defendant's Motion for Summary Judgment, "Def.s' Mot. for Summ. J." Exh. 2, at 11). Whether Office Depot's actions were reasonable in its attempts to clear the area in front of the Office Depot store on the morning of January 30, 2010 are in dispute.

Ultimately, the Court of Appeals of Tennessee explained that it is not knowledge of dangerous conditions that potentially bars plaintiffs from recovery, it is whether the plaintiff "exercised reasonable care for his own safety" that is relevant in determining whether the plaintiff is barred from recovery. *Mumford v. Thomas*, 603 S.W.2d 154, 156 (Tenn. Ct. App. 1980). Whether Plaintiff's actions were reasonable is a question for the jury.

## V. Conclusion

For the reasons set forth herein, the Court RECOMMENDS that Office Depot's Motion for Summary Judgment be DENIED.

**IT IS SO ORDERED** this 27th day of July, 2012.

/s/ Charmiane G. Claxton
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN TEN (10) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**